UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMETRIUS WILLIAM EDWARDS,

        Petitioner,            Case No. 2:17-cv-10103
                                   Hon. George Caram Steeh

v.

MARK MCCULLICK,

        Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR
WRIT OF HABEAS CORPUS, (2) GRANTING A CERTIFICATE
OF APPEALABILITY WITH RESPECT TO PETITIONER'S THIRD
CLAIM, AND (3) DENYING A CERTIFICATE OF APPEALABILITY
WITH RESPECT TO PETITIONER'S REMAINING CLAIMS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. §

2254.[1] Petitioner Demetrius William Edwards was convicted after a bench

trial in the Wayne Circuit Court of first-degree felony murder, MICH. COMP.

LAWS § 750.316. Petitioner was sentenced to life imprisonment.

The petition raises four claims: (1) Petitioner's right to a public trial

was violated when the courtroom was cleared of members of the public

during his preliminary examination, (2)  Petitioner was denied adequate

_____

[1]Petitioner was tried with co-defendant Bryant Lamont Royster, who was also convicted
of first-degree murder. Royster filed a petition under § 2254, raising the same claims
raised by Petitioner. See *Royster v. Trierweiler*, Eastern District of Michigan Case No.
2:17-cv-10101. That petition will be adjudicated in a separate opinion, though there is a
substantial overlap between the two cases.

notice of the charges because the felony information omitted the element of malice from the felony murder charge, (3) Petitioner's right to be personally present, his right to confront witnesses, and his right to counsel were violated during two mid-trial visits to the crime scene, and (4) Petitioner was denied the effective assistance of counsel by his attorney's failure to investigate prosecution witness Deonte Smith prior to trial.

The Court finds that Petitioner's claims are without merit or barred by his state court procedural defaults. Therefore, the petition will be denied. The Court will, however, grant a certificate of appealability with respect to Petitioner's third claim, but it will deny a certificate of appealability with respect to his other claims.

## I. Background

The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case is the latest and—with life sentences—now the last of these young defendants' routine disrespect for the rule of law. The facts of this case stretch back to the evening of September 24, 2010. On that day, Edwards was free on a GPS tether to "settle [his] affairs," having been sentenced just the day before for a prior armed robbery conviction. Apparently, those affairs included a trip to the Eastland Mall with Royster and two acquaintances, Devante Smith and Jaisaun Holt.

Around 8:30 p.m., the decedent, Cedell Leverett, was sitting in the driver's seat of his Mercedes parked in the valet area of Eastland Mall. Another car was parked nearby. Deborah Gaca observed Edwards get out of the other car, and run towards the valet area in a crouched position. Edwards was holding a gun. Royster, who was standing outside the driver's side of the other car, yelled, "Pop him, pop that mother f***** good." Edwards then fired four shots into the Mercedes at close range, killing Leverett. Edwards ran back to the other car, which was backing out, and fled the scene. Police subsequently arrived and found over $3,000 in the decedent's pocket. Corroborating Edwards's and Royster's presence at the Eastland Mall during this time were a surveillance video and Edwards's tether records.

Holt confirmed in a police interview (which he later disavowed at trial) that Edwards intended "to get [the decedent's] glasses and he hit him," before Royster whisked them away in the car. Although Holt also elaborated that Edwards claimed to have shot the decedent after the decedent brandished a firearm, police found no weapons in or around the Mercedes or on the decedent's person during their investigation immediately after the shooting. Devante claimed the others left the Eastland Mall without him.

Deonte Smith, Devante's brother, provided further information regarding the shooting during a police interview. Deonte stated that he saw defendants, Holt, and his brother (Devante) at a high school football game sometime after the shooting. At the game, "they" told Deonte they had seen a man walking around the Eastland Mall with a diamond watch and $12,000 to $15,000 cash in his pocket. Holt kept tabs on this man and reported to Edwards by phone. Edwards "bragged" to Deonte that he tracked the man outside and tried to rob the man of his watch, but because the man was reaching for something, Edwards shot him. Others at the football game told Edwards he was stupid for not getting anything.

About a week after the shooting, a security officer at the Northland Mall in Southfield saw Edwards toss a gun under an

SUV in the parking lot while fleeing a fight. Edwards was arrested at the scene. Royster was apparently arrested shortly thereafter. Subsequent tests of the gun revealed that this weapon had fired the shell casings and bullet fragments found in and around the Mercedes and inside the decedent at the Eastland Mall one week earlier. In addition, police interviewed another individual who had previously accompanied the decedent on the day of his death and whom the police found at the scene of the Eastland Mall after the shooting. That individual surrendered a diamond watch and sunglasses. Notably, the decedent's daughter saw the decedent wearing a diamond watch and sunglasses earlier that same day.

The case subsequently proceeded to trial at the conclusion of which the court made its findings on the record. As noted, the court acquitted defendants of first-degree premeditated murder, but found them guilty of the offenses at issue. Defendants were sentenced, and this appeal followed.

*People v. Edwards*, 2015 WL 1069275, at *1-2 (Mich. Ct. App. March 10, 2015).

Following his conviction and sentence, Petitioner filed an appeal of

right. His appellate counsel filed an amended brief on appeal, raising what

now form his four habeas claims among the six claims raised:

I. Defendant Edwards was deprived of his structural right to a public trial when the district court judge expelled the members of the public in attendance at the preliminary examination at the end of business hours and proceeded to conduct the preliminary examination in the complete absence of the general public and ultimately secured testimony from Deonte Smith, this error seriously affecting the fairness, integrity, and public reputation of the judicial proceedings because the preliminary examination testimony of Deonte Smith which was secured in violation of defendant Edwards' Sixth Amendment right to a public trial was ultimately introduced at the trial itself and relied upon by the trier of fact.

-4-

II. Reversal is required where the trial court failed to comply with MCR 6.402(b) by neglecting "by personally addressing the defendant" to ascertain, whether defendant Edwards had voluntarily chosen to give up his Sixth Amendment right to trial by jury, given the strong presumption against waiver of fundamental constitutional rights and that waiver cannot be presumed to be voluntarily from a silent record.

III. The felony murder conviction must be vacated where the trial court judge's factual findings were fundamentally inconsistent with the guilty of felony murder verdict, given that the trial court judge acquitted defendant Edwards of felony murder when he concluded that there was no proof of malice and when he declared that he did.

IV. Violation of defendant Edwards' Sixth and Fourteenth Amendment right to adequate notice of charge require reversal, where defendant Edwards was charged with felony murder, but the felony information and the statute itself omitted the essential *mens rea* of malice element, leaving Defendant Edwards completely unaware of the prosecution's duty to prove this element and hindering his ability to prepare to disprove it.

V. Defendant Edwards was (1) deprived of his right to be present during all critical stages of the proceedings where he was excluded from the viewing of the alleged scene of the crime over his objection, without adequate justification for his exclusion; (2) denied his right to confrontation when one of the star witnesses was permitted to attend the viewing of the alleged scene of the crime and permitted to provide additional testimony in defendant Edwards' absence; (3) deprived of his Sixth Amendment right to counsel during a critical stage of the proceedings when the trial court judge who was also the trier of fact reported to the alleged scene of the crime, for a second time, without defendant Edwards, his attorney, or the prosecutor and relied on evidence that he gathered during his solo viewing to convict defendant Edwards.

VI. Defendant Edwards was deprived of his Sixth Amendment right to the effective assistance of counsel where trial court

counsel failed to conduct a pretrial investigatory interview of essential prosecution witness Deonte Smith, who was the only witness who supported that the homicide occurred during the commission of an attempted larceny.

Petitioner also filed a supplemental *pro se* brief raising an additional

five claims:

I. Mr. Edwards is entitled to a new trial because the constitutional requirement that the felony information set forth every element of the crime charged was abdicated where the felony murder statute does not completely define the crime of felony murder, and the felony information in this case lacked the essential element of malice contrary to U.S. Const. Ams. VI, XIV, resulting in a failure to charge a criminal offense, thus this portion of the information must be quashed.

II. Mr. Edwards is entitled to a new trial because he was denied his Sixth and Fourteenth Amendment right to a public trial by the court's removal of the public from the preliminary examination at the end of business hours, and proceeded with the examination to secure the testimony of Mr. Deonte Smith, who for some unknown reason did not want to testify in public. Smith subsequently refused to testify at trial on the ground of privilege and his recorded testimony was used to convict Mr. Edwards, then a new trial is required.

III. Mr. Edwards is entitled to a new trial because the trial court's factual findings were inconsistent with the guilty of felony murder verdict to the extent that the trial judge concluded that Appellant did not initially intend to kill the decedent. Thus, Appellant's felony murder conviction must be vacated in absence of a judicial finding of the element of malice.

IV. Mr. Edwards is entitled to a new trial because trial counsel was ineffective for failing to object to: (a) the felony information which charged no crime, (b) the closure of the courtroom during preliminary examination, (c) the trial court's failure to comply with MCR 6.402, (d) the trial court's second visit to the crime

scene without counsel or notice to defendant and opportunity to be heard on any objections, and failing to investigate contrary to U.S. Const. Ams. VI and XIV; Const. 1963, Art. I, sec. 20.

V. Mr. Edwards is entitled to a new trial because the register of actions show that there was no criminal complaint filed in this case and the filing of a recommendation for a warrant does not constitute a complaint as defined by MCR 6.101. Thus, in absence of a filed complaint, lawful judicial authority is absent and the proceedings are without legal force or effect.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Edwards*, 2015 WL 1069275. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court filed by his current counsel. The application raised what now form his four habeas claims, as well as additional claims not present in this action. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Edwards*, 870 N.W.2d 68 (Mich. Oct. 15, 2015)(Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103 (internal quotation omitted).

## III. Analysis

<u>A. Public Trial</u>

Petitioner's first claim asserts that his right to a public trial was violated when the state district judge cleared members of the public from the courtroom during the first day of the preliminary examination. Petitioner claims that the error was prejudicial because after the courtroom was cleared witness Deonte Smith provided what Petitioner claims is the only evidence that the murders were perpetrated during the course of a robbery. Respondent asserts in part that the claim is procedurally defaulted because no contemporaneous objection was made to the closure of the courtroom.[2]

The Sixth Amendment to the United States Constitution guarantees that a criminal defendant, "shall enjoy the right to a . . . public trial." U.S. Const. Amend. VI. This right is made applicable to the States through the

_____

[2]Petitioner asserts that Respondent abandoned its procedural default defense because it conflates the concept of "forfeiture" and "waiver." See Dkt. 8, Reply Brief, at 18-19. Petitioner's assertion is incorrect. Respondent's Answer clearly asserts that review of this claim is barred by Petitioner's procedural default in addition to being waived. See Dkt. 6, Response, at 30-31.

Fourteenth Amendment. *Presley v. Georgia*, 558 U.S. 209, 212 (2010) (citing *In re Oliver*, 333 U.S. 257 (1948)). "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Id.*, at 270 n.25 (quotation marks and citation omitted). "In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Waller v. Georgia*, 467 U.S. 39, 46 (1984).

The *Waller* Court identified four factors a court must consider, and findings a court must make, before excluding members of the public from the courtroom: (i)"the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced," (ii) "the closure must be no broader than necessary to protect that interest," (iii) "the trial court must consider reasonable alternatives to closing the proceeding," and (iv) "it must make findings adequate to support the closure." *Id.* at 48.

Like many other constitutional rights held by the criminally accused, however, the right to a public trial may be forfeited or waived if not asserted. See *Levine v. United States*, 362 U.S. 610, 619 (1960) ("The

continuing exclusion of the public in this case is not to be deemed contrary to the requirements of the Due Process Clause without a request having been made to the trial judge to open the courtroom at the final stage of the proceeding, thereby giving notice of the claim now made and affording the judge an opportunity to avoid reliance on it. This was not a case of the kind of secrecy that deprived petitioner of effective legal assistance and rendered irrelevant his failure to insist upon the claim he now makes. Counsel was present throughout, and it is not claimed that he was not fully aware of the exclusion of the general public.").

As the Sixth Circuit explained:

While we agree that the right to a public trial is an important structural right, it is also one that can be waived when a defendant fails to object to the closure of the courtroom, assuming the justification for closure is sufficient to overcome the public and media's First Amendment right to an open and public trial proceeding. See *Freytag v. Commissioner*, 501 U.S. 868, 896 (1991) ("[T]he Sixth Amendment right to a trial that is 'public,' provide[s] benefits to the entire society more important than many structural guarantees; but if the litigant does not assert [it] in a timely fashion, he is foreclosed.") (collecting cases); see also *Peretz v. United States*, 501 U.S. 923, 936-37 (1991) (citing *Levine v. United States*, 362 U.S. 610, 619 (1960)). Because [the habeas petitioner] failed to object to the closure, his claim is procedurally defaulted unless he can show cause and prejudice for the default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)."

*Johnson v. Sherry*, 586 F.3d 439, 444 (6th Cir. 2009).

Here, neither counsel for Petitioner nor counsel for his co-defendant

objected to the removal of members of the public during the preliminary examination.

The record indicates that for about a half-hour during the first day of the preliminary examination, proceedings were interrupted by repeated disturbances by members of the public, prompting the court to remove member of the public from the hearing. In the midst of an otherwise unremarkable examination of a witness by the prosecutor during the preliminary examination, there appears an alarming entry in the record: "(At 3:54 p.m. to 3:55 p.m., riot in courtroom)." Dkt. 7-3, at 76. The next fifteen pages of the record describe the tumult in the courtroom and the court's efforts to retain control over the proceedings:

- The court warns anyone that is standing that they will be arrested. Id. at 76.

- A police officer orders an unidentified man out of the courtroom. Id.

- The court warns the people in the courtroom about the dangers of a mob mentality. Id. at 77.

- Two people leave the courtroom crying. Id.

- A member of the public accuses one of the defendants of saying, "that's why that motherfucker dead." Id.

- A member of the public accuses one of the defendants of spitting on a girl in the courtroom. Id.

- The record indicates, "(At 3:59 p.m. to 4:00 p.m., another riot

in courtroom and in hallway)." Id. at 78-79.

• The court orders one side of the gallery, apparently the side there in support of the defendants, to leave. Id. at 79.

• A woman is arrested after swearing. Id.

• The court orders that both "sides" will be removed and it will "hold court in private." Id. at 80.

• A man asks the court what happened to his wife, saying that "her head is swelled up this big. We're supposed to be protected in here." Id.

• The court indicates that police from seven jurisdictions are present. Id.

• A police chief asks for an additional ten minutes before removing the second half of the gallery, apparently those present in support of the victim. Id.

• The court indicates that it will attempt to "clear the area so you don't get jumped by anybody where we don't have security cameras, or anybody there to help you." Id. at 81.

• A police lieutenant indicates that the second side of courtroom will not be removed because "we assume the problem is gone." Id.

• A few minutes later, the court reverses course again and indicates that the second side will, in fact, be removed "[after] it's clear outside, these people will be released." Id. at 82.

• The court states: "This is very, very disturbing. I have never - I've been here thirty-five years, and I have never had anything close to anything like this. Nothing close." Id. at 83.

• The court warns defendant Edwards that if he stands up again he will be "banished from the rest of the proceedings." Id.

• A witness is brought in a scout car, "[b]ut we didn't want to bring him through. . . . With everything that's going on. . . . They'll be bringing him right through the side." Id. at 91.

• The court removes the rest of the public at 4:29, stating: "I'm going to now empty the courtroom. I'm advised that it should be safe for you. The police will be out there looking to make sure none of you are jumped, or anything. But I can't guarantee your safety." Id. at 100.

• After the courtroom is emptied, the examination of Deonte Smith continues until 5:59. Id. at 181.

At no point in the proceedings did either attorney for the defendants object to any of the actions of the court. On the next morning of the preliminary examination the court indicated that it had entered an order agreed upon by the parties limiting access of the public for the remainder of the preliminary examination:

> The Court: I have created an Order that provides for limited seating. I asked defense counsel for the name of the witnesses that they would like to have present, and they gave me a list. The, and for the - not the Attorney General, the prosecuting office, for the victim's family. And we have, and I have entered an Order yesterday limiting it to these people that were agreed to . . . .
>
> *   *   *
>
> And so we are all satisfied at this point. I understand we're going to place on the record that between all the parties, we have no objections to proceeding with this reduced access to the public. We did provide that the public could be these witnesses, but also any other members of the press with credentials, and of course, what we call resources of police response.

-14-

So, Ms. Towns [the prosecutor], are we in agreement on that?

Ms. Towns: Yes, Judge. That's fine with the People.

The Court: And Mr. Glanda [counsel for Edwards]?

Mr. Glanda: Yes, Judge.

The Court: And Ms. Diallo [counsel for Royster]?

Ms. Diallo: No objection on behalf of Mr. Royster.

Dkt. 7-5, at 3-5.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A four-part test is used to determine whether a claim is procedurally defaulted: (1) there exists a state procedural rule that is applicable to the petitioner's claim and the petitioner failed to comply with the rule, (2) the state courts actually enforced the state procedural sanction, (3) the state procedural ground is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim, and

(4) the petitioner has not demonstrated cause for failing to follow the procedural rule and actual prejudice. *Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011).

The first inquiry is whether there exists a procedural rule applicable to Petitioner's claim, and whether Petitioner violated it. Michigan courts "have long recognized that, in general, an issue is not properly preserved for appeal if it is not raised before the trial court." *People v. Bauder*, 712 N.W.2d 506, 510 (Mich. Ct. App. 2005) (citing *People v. Grant*, 520 N.W.2d 123, 128 (Mich. 1994)). Petitioner's counsel did not comply with the procedural rule when he failed to object to the state district court's actions during the disruptions on the first day of the preliminary examination. When the matter was discussed the next morning, counsel agreed to the Court's order limiting access of the public to the remainder of the preliminary examination, and he made no objection regarding the court's actions of the previous day. Accordingly, Petitioner failed to comply with Michigan's contemporaneous objection rule, and, therefore, the first prong of the procedural default test is met.

Next, the Michigan Court of Appeals enforced the procedural sanction. In determining whether state courts have relied on a procedural rule to bar review of a claim, a court looks to the last reasoned opinion of

the state courts and presumes that higher state courts not rendering an explained decision enforced the bar as well. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Furthermore, this court has recognized that "[p]lain error analysis . . . is not equivalent to a review of the merits," and plain error review enforces rather than waives procedural default rules. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Hinkle*, 271 F.3d at 244 (characterizing plain error review as the enforcement of a procedural default). The Michigan Court of Appeals, the last state court to issue a reasoned opinion reviewing Petitioner's public trial claim, found that it was subject to plain error review:

> "[A] defendant's right to a public trial is subject to the forfeiture rule articulated in *People v. Carines,* [460 Mich. 750; 597 N.W.2d 130 (1999)] . . . ." *People v. Vaughn*, 491 Mich. 642, 646; 821 N.W.2d 288 (2012). Thus, for [Petitioner] to prevail on this unpreserved issue, he must show plain error affecting his substantial rights, i.e., outcome determinative error.

*Edwards*, 2015 WL 1069275, *3. The Michigan Supreme Court subsequently denied leave to appeal by unexplained order. Therefore, the state courts enforced the contemporaneous-objection procedural sanction.

Third, the Court must determine whether the procedural bar was an "adequate and independent" state ground foreclosing a merits review of Petitioner's claim. The adequate and independent state ground doctrine

"applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729-30. "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review." *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004) (citation omitted)). The Sixth Circuit has recognized that Michigan's contemporaneous objection rule is regularly followed. *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citing *Draper v. Adams*, No. 98-1616, 2000 WL 712376, at *9 (6th Cir. 2000) (unpublished table decision)).

Petitioner argues that enforcement of the contemporaneous objection rule does not provide an adequate basis to bar review of his public trial claim because the Supreme Court has enforced the right despite a lack of objection at trial. See Dkt. 8, Reply Brief, at 19-22 (citing *In re Oliver*, 333 U.S. 257, 272 (1948); *Gannet Co v. DePasquale*, 443 U.S. 368, 375 (1979); *Richmond Newspapers v. Virginia*, 448 U.S. 555, 560 (1980); *Waller*, 467 U.S. at 42 n. 2; *Presley*, 130 S.Ct. at 724 ("The public has a right to be present whether or not any party has asserted the right.")). Most of the cases relied upon by Petitioner, however, do not concern application

of the existent habeas corpus procedural-default doctrine to a public trial claim. The one case that does, *Waller*, undermines Petitioner's position. The footnote cited by Petitioner states that four of the five habeas petitioners had objected at trial, and that as to the petitioner that did not object, the case was remanded to determine whether his public trial claim was procedurally barred. Accordingly, the *Waller* court recognized that a contemporaneous objection rule is an adequate ground for defaulting a public trial claim. Moreover, the Court notes that under binding Sixth Circuit precedent the procedural default doctrine applies to public trial claims. See *Bickham v. Winn*, 888 F.3d 248, 251 (6th Cir. 2018); *Johnson*, 586 F.3d at 444; (6th Cir. 2009). Finally, the Court notes that the justification for closing the proceeding here–rioting and ensuring the physical safety of members of the public–was sufficient to overcome the public and media's First Amendment right to an open and public proceeding. The Court cannot conceive of a more appropriate reason for closing a proceeding.

Because Petitioner failed to comply with a state procedural rule constituting an adequate and independent state ground for the state court's decision, review of his public trial claim is barred unless he can "demonstrate . . . that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error."

*Stone*, 644 F.3d at 346 (quoting *Maupin*, 785 F.2d at 138).

"[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner's reply brief does not attempt to assert cause to excuse his default, choosing instead to argue that Respondent waived the defense or that the defense does not apply to public trial claims. Accordingly, Petitioner has completely failed to demonstrate cause to excuse the procedural default of his public trial claim.

Nevertheless, it should be noted that Petitioner's supplemental pro se brief filed in the Michigan Court of Appeals argued that his counsel was ineffective for failing to object to the closure of the courtroom. Ineffective assistance of counsel only suffices if the deficient performance purporting to provide cause for the default would be sufficient to merit its own independent constitutional claim. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). In order to prevail on a claim of ineffective assistance of counsel, Petitioner "must show both that his counsel's performance was deficient and that the deficient performance prejudiced the defense." *Hodges v. Colson*, 711 F.3d 589, 613 (6th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). To show deficiency, Petitioner must

establish that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Petitioner has failed to demonstrate that his counsel performed deficiently in failing to object to the closure of the courtroom. Specifically, nothing in the record suggests that the court would have been inclined to keep the courtroom open to the unruly mob present had an objection been made by counsel. Rather, it is reasonable to conclude that had defense counsel asserted Petitioner's right to a public proceeding and cited *Waller*, the court simply would have gone over the *Waller* factors and ruled that closure was nonetheless warranted.

Where, as here, a petitioner fails to show cause, the Court need not consider whether he has established prejudice. See *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

Finally, Petitioner  has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception to the procedural default rule requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998) (citation omitted). "To be credible, [a claim of actual

innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. This claim, therefore, is procedurally defaulted.

B. Notice of Charges

Petitioner's second claim asserts that he had insufficient notice of the charges against him because the Felony Information failed to notify him of the requirement that first-degree felony murder requires that the accused acted with malice. Petitioner further asserts that, contrary to the decision of the Court of Appeals rejecting this claim, a defective charging instrument cannot be cured by the testimony offered at a preliminary examination or by the language contained in a different count of the charging document.

As it did with Petitioner's first claim, the Michigan Court of Appeals found that review of this claim was limited to "plain error" because the claim was not preserved in the trial court. *Edwards*, 2015 WL 1069275, *7. Accordingly, for the same reasons outlined above, review of Petitioner's second claim is procedurally barred from review, and Petitioner has failed to demonstrate cause to excuse the default.

Nevertheless, the claim is without merit. The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const., Amend. VI. The Sixth Circuit has explained this right, as applied to the States through the Fourteenth Amendment, as follows:

> The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense. *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Combs v. Tennessee*, 530 F.2d [695, 698 (6th Cir. 1976)].

*Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).

After finding that the claim was defaulted, the Michigan Court of Appeals rejected Edwards' claim as follows:

> The felony information coupled with the preliminary examination was constitutionally sufficient to dispel the ignorance that Edwards claims was plaguing him below. With respect to felony murder, the information alleged that Edwards "did while in the perpetration or attempted perpetration of a larceny, murder one [sic] Cedell Leverett; contrary to MCL 750.316(1)(b)," punishable by [l]ife without parole." This fairly apprised Edwards of the nature of the offense as required by court rule and statute. See MCR 6.112(D) (requiring the

information to set forth the notice required by MCL 767.45, in addition to the substance of the accusation and the applicable penalty, among other things), and MCL 767.45(1)(a) (requiring the information to contain "[t]he nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged."). Moreover, the facts presented at the preliminary examination mirror those presented at trial. They showed Edwards approaching the decedent in a crouched position and holding a gun with the intent to rob him. "Malice may . . . be inferred from the use of a deadly weapon." *Carines*, 460 Mich. at 759. A gun is a dangerous weapon. See *People v. Parker*, 417 Mich. 556, 565 (1983). Accordingly, the felony information, framed with reference to this evidence, fairly apprised Edwards of the requisite intent of this offense.

Edward's argument that had he known that felony murder requires a malicious intent, he would have testified that he lacked malice when he shot the decedent, defies common sense. Although the information did not expressly contain a "malice" theory in support of the felony murder charge, the information for the first-degree premeditated murder charge explicitly alleged that Edwards acted "deliberately, with the intent to kill . . . ." (Emphasis added.) Malice includes the intent to kill. *Smith*, 478 Mich. at 318-319. Even with this notice, Edwards elected not to testify.

In light of this, Edwards was fully apprised of the nature of the charges against him and his ability to defend against them was certainly not prejudiced.

*Edwards*, 2015 WL 1069275, *8.

This decision was not unreasonable. Petitioner's argument hinges on the premise that it is unreasonable to expect a lay person to understand that a charging document that alleged the accused "did while in the perpetration or attempted perpetration of a larceny, murder one [sic] Cedell

Leverett; contrary to MCL 750.316(1)(b)," required the prosecutor to prove that he acted with malice. See, e.g., Dkt. 8, Petitioner's Reply, at 24 ("No fair-minded jurist would expect a non-lawyer criminal defendant to review a charging instrument and somehow recognize that a critical element was amiss from one of the charged offenses, then expect the same layman criminal defendant to look for the omitted element amongst another separate and distinct charge and carry that element over to the defective charge.").

The argument completely ignores the fact that at all times during state court proceedings Petitioner was represented by presumptively competent counsel. The Supreme Court has stated that "'it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of [the offense charged]." *Marshall v. Lonberger*, 459 U.S. 422, 436 (1983) (quoting *Henderson v. Morgan*, 426 U.S. 637, 647 (1976)). Here, the requirement to prove malice to support a charge of first-degree felony murder was established by the Michigan Supreme Court in 1980. See *People v. Aaron*, 409 Mich. 672 (1980). Aside from the fact that the charging document clearly accused Petitioner of murdering the victim during the perpetration of a larceny (and murder requires malice), it is

appropriate to presume that Petitioner's attorneys informed him of the nature of the felony murder charge, including the malice element that had been established in Michigan for over thirty years. Petitioner made no allegation in the state courts–and he makes none here–that his counsel failed to inform him of the nature of the charges against him.

For the same reasons, Petitioner has failed to demonstrate that he was actually prejudiced by his counsel's failure to object to the felony information so as to excuse the procedural default of this claim.

Petitioner's second claim is both procedurally barred from review and without merit.

## C. Visits to the Crime Scene

Petitioner's third claim raises his strongest challenge to the validity of his conviction. Petitioner asserts that several of his constitutional rights were violated during two trips to the crime scene. The first trip occurred without Petitioner being present, and the second trip occurred outside both Petitioner or his counsel's presence. Petitioner alleges that both visits violated his Sixth Amendment right to be personally present at all critical stages of the proceedings, that the first visit denied his Sixth Amendment right to face-to-face confrontation when one of the witnesses also attended the crime scene visit, and that the second visit violated his Sixth

Amendment right to counsel during a critical stage of the proceedings.

The Michigan Court of Appeals found in part that the claim was defaulted by Petitioner's failure to object to the visits:

> This brings us to the argument in Edwards's principal brief that the trial court twice improperly viewed the scene of the crime and denied him the right to confront Gaca when she accompanied the court to the scene. This issue first appears on the record during the second day of trial when the court indicated that the attorneys would accompany the court to the crime scene. Apparently, this was originally planned to occur without defendants present, for when defendants' attorneys subsequently indicated their clients' desire to attend this viewing, the court canceled the visit unless defendants "change[d] their mind." Subsequently, while delivering its factual findings, the trial court noted that there "was a[n] independent going to the scene of the crime with defense counsel and the officer-in-charge, but we were met with Ms. Gaca and to basically get the site of where she was and where the cars were [sic]." The court added that it "also went to the mall at approximately 10:30, 10:00, 10:30 p.m. at night to see what the night light looked like. And as I indicated earlier, you could see very well into the parking lot area. It was very well-lit."
>
> As a preliminary matter, Edwards has waived any claim concerning both the court's first viewing of the scene and confronting the eyewitness there. His counsel was not only present during those events, but counsel additionally agreed on the two questions asked of Gaca, which pertained only to her vantage point during the shooting. Even more, Edwards's counsel stipulated that Gaca's testimony on this score be read into the record. See *People v. McPherson*, 263 Mich. App. 124, 139 (2004) (a party waives appellate review when the conduct of the party or his counsel "invit[es] the error and fails to object"), citing *People v. Carter*, 462 Mich. 206, 215-216 (2000); see also *People v. Riley*, 465 Mich. 442, 448 (2001). Regardless, even if the issue were not waived, our review would be for outcome determinative error since Edwards failed

to object to either visit or the alleged testimony below. *Carines*, 460 Mich. at 764-765 (a claim of constitutional error requires a contemporaneous objection to preserve it for appeal); see also *People v. Broadnax*, 57 Mich. App. 621, 622-623 (1975) (defendant could not raise this issue for first time on appeal where, among other things, defense counsel participated in the judge's viewing of the scene and did not object).

With respect to the fact-finder's viewing of a crime scene, it is well established that when the fact-finder is the jury, the viewing constitutes a critical stage of a criminal proceeding which a criminal defendant has the right to attend with the assistance of counsel. *People v. Kurylczyk*, 443 Mich. 289, 296 (1993) (opinion by GRIFFIN, J.); *People v. Kent*, 157 Mich. App. 780, 793 (1987), citing *People v. Mallory*, 421 Mich. 229, 244-248 (1984). However, Edwards has not cited—nor have we found—Michigan authority addressing the issue of a trial court's viewing of a crime scene in the absence of defendant or his counsel. Several federal courts have held, however, that the same principles apply. See, e.g., *United States v. Walls*, 443 F.2d 1220, 1222-1223 (6th Cir. 1971) ("The principles applicable to a view by a judge sitting without a jury are not substantially different [than those applicable to a jury]"); *Payne v. United States*, 697 A.2d 1229, 1235 (D.C. 1997), citing *Lillie v. United States*, 953 F.2d 1188, 1191 (10th Cir. 1992) (finding the court's viewing of the crime scene, although erroneous, was not prejudicial). Moreover, while the Confrontation Clause entitles a criminal defendant the right to a face-to-face meeting with witnesses appearing before the trier of fact, the right is not absolute, *People v. Staffney*, 187 Mich. App. 660, 663 (1990), and is not as broad in scope as the right to be present at trial, *Mallory*, 421 Mich. at 247.

Assuming the right to attend the viewing of the scene extends to bench trials, we find no error requiring reversal. In the first place, Edwards's counsel was present for the initial viewing by the court and Gaca. Moreover, counsel agreed to the two questions asked of Gaca and stipulated to her testimony. Those pertained to her location and whether she moved during the shooting. Her testimony that she only moved

when the gunman ran towards the car, however, only damaged her credibility and helped Edwards. On this point, the trial court expressly found that Gaca stood 50 feet from the incident, rather than the 20 feet she claimed at trial. In view of this, Edwards's failure to raise this issue below smacks of harboring error as an appellate parachute. *People v. Riley*, 465 Mich. 442, 448 (2001). We will not tolerate such gamesmanship. But even if there were error, it certainly was not outcome determinative in light of the overwhelming evidence against Edwards. This included the evidence of Edwards's intent to rob the decedent, the forensic evidence linking Edwards's gun to the shooting, and the tether and surveillance video placing Edwards at the scene.

Likewise, even if the court's second viewing were improper, it did not violate Edwards's substantial rights. The court indicated that its only purpose was to confirm the lighting of the parking lot. That fact was of little consequence in light of the other incriminating evidence, especially the surveillance video, tether, and forensic evidence. Again, Edwards was not prejudiced, and, not surprisingly, he makes no claim that he was actually innocent or that this fundamentally affected the proceedings in an adverse way.

Before moving on, we note that Edwards relies on *United States v. Cronic*, 466 U.S. 648 (1984), among other cases, to suggest that any error was structural and requires automatic reversal. Edwards ignores, however, that "every federal circuit court of appeals has stated, post-*Cronic*, that an absence of counsel at a critical stage may, under some circumstances, be reviewed for harmless error." *People v. Murphy*, 481 Mich. 919, 923 (2008) (MARKMAN, J., concurring), citing, among others, *Satterwhite v. Texas*, 486 U.S. 249 (1988), *Ellis v. United States*, 313 F.3d 636, 643 (1st Cir. 2002) (absence of counsel at critical stage would require presumption of prejudice only if "pervasive in nature, permeating the entire proceeding"), and *United States v. Lampton*, 158 F.3d 251, 255 (5th Cir. 1998) (applying harmless-error review when counsel was absent during adverse testimony). Our facts fall squarely in line with this authority and we see no compelling reason to deviate

today. Reversal is not warranted.

*Edwards*, 2015 WL 1069275, *8-10 (footnotes omitted).

The record shows that neither Petitioner nor Royster objected to either visit on the grounds now asserted in the habeas petition. The prospect of a visit to the crime scene was first broached during the second day of trial. Dkt. 7-13, at 114. The court indicated that "[w]e had a trip planned on side bar tomorrow at lunch. The plan is to go to the crime scene just with the attorneys." Id. Both defense attorneys initially objected to the visit on the grounds that their clients requested to be present. Id. In view of the objection, the court stated, "[t]hen we're not going . . . If they change their mind, they change their mind." Id.

It is evident from the record that the defendants must have, in fact, changed their minds because two days later the court indicated that the trip had taken place. Dkt. 7-15, at 36. The court stated that it, along with the prosecutor, both defense attorneys, police officers, and prosecution witness Deborah Gaca, went the scene of the shooting. Id. The court further stated that the parties had agreed to ask Gaca where she had been positioned during the shooting, and whether she moved at any point:

> [Prosecutor]: Yes, When asked where she stood, Ms. Gaca positioned herself between the pillars. And the Court saw where she was standing, so I don't need to put that on the record. When asked did you move at all while you were watching this

incident going on, she said no, the only time she moved was when she saw the gunman running towards the car. She then physically backed up against the pole in front of all of us and showed us the position where she was after the shooting took place. Is that a correct and fair assessment of the statements made by Ms. Gaca?

[Counsel for Royster]: That is, your Honor.

[Counsel for Edwards]: Yes.

[Prosecutor]: And I would stipulate to those statements. Would you stipulate to those statements as well?

[Counsel for Royster]: Yes, that's what she said at the time, your Honor.

[Counsel for Edwards]: That's correct.

Id. at 36-37.

The Court then indicated that it visited the scene on another

occasion, and it essentially asked the parties whether they had any

objection to the second visit:

The Court: Anything else? And I will say that the night before I, myself, went out to just look at the lighting around the place. I went at approximately 10:00 p.m. to see what it looked like, the lighting was like at the mall from that area we were standing yesterday. Anything else to put on the record regarding that?

[Prosecutor]: Not regarding that, your Honor.

THE COURT: Okay.

[Counsel for Royster]: No, your Honor.

[Counsel for Edwards]: No.

Id. at 37-38.

Despite the defendants' initial demand to be personally present at any visit, the record demonstrates that two visits took place, and when the visits where discussed on the record, neither defendant objected on any basis. Accordingly, when the Michigan Court of Appeals reviewed the claims involving the visits, it found review was limited to the plain error standard due to the failure of the defendants to object. The Michigan Court of Appeals stated:

> [E]ven if the issue were not waived, our review would be for outcome determinative error since Edwards failed to object to either visit or the alleged testimony below. *Carines*, 460 Mich. at 764-765 (a claim of constitutional error requires a contemporaneous objection to preserve it for appeal); see also *People v. Broadnax*, 57 Mich. App. 621, 622-623 (1975) (defendant could not raise this issue for first time on appeal where, among other things, defense counsel participated in the judge's viewing of the scene and did not object).

*Edwards*, 2015 WL 1069275, *9.

Accordingly, as with Petitioner's previous claims, this claim is also procedurally defaulted. The decision of the Court of Appeals indicates that it actually enforced Michigan's contemporaneous objection rule by noting Petitioner's failure to assert his arguments in the trial court, and as discussed above, the rule is an adequate and independent state ground foreclosing review of Petitioner's constitutional claim.

The Court notes the importance of application of the procedural default rule to this claim. With respect two of Petitioner's legal arguments, the claims might have been resolved on the basis that there was otherwise strong evidence of Petitioner's guilt, and the limited information gleaned at the visits was not overly prejudicial to his defense. With respect to Petitioner's right to be personally present, the right "is not absolute, but exists only when his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *United States v. Henderson*, 626 F.3d 326, 343 (6th Cir. 2010) (quotation marks omitted)). "In other words, the defendant's presence is not guaranteed when it would be useless, but only to the extent that a fair and just hearing would be thwarted by his absence." *Id.* (quotation marks omitted). Petitioner has not indicated how his personal presence at either visit would have been useful and was required for a fair and just hearing.

Similarly with respect to the Confrontation Clause claim, any violation is subject to harmless error analysis. See *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). And here, Petitioner has not shown how his inability to cross-examine or confront Gaca regarding what she saw or said on either visit "had a substantial and injurious effect or influence in determining the [trial court's] verdict." *Fry v. Pliler*, 551 U.S. 112, 116 (2007). Indeed, as

indicated below, Gaca's estimation of being only twenty feet from the scene of the shooting was revised in Petitioner's favor to about fifty feet after the visit. The visit benefitted Edwards defense in that it placed the lone eyewitness to the shooting further away than she thought.

It is reasonably debatable, however, whether the same analysis applies to Petitioner's right-to-counsel claim. The Supreme Court has clearly established that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice. *United States v. Cronic*, 466 U.S. 648, 659 (1984). The existence of certain structural defects in a trial, such as the deprivation of the right to counsel, requires automatic reversal of the conviction because it infects the entire trial process. *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993). In *Penson v. Ohio*, 488 U.S. 75 (1988), the Supreme Court held that the right to counsel is "'so basic to a fair trial that [its] infraction can never be treated as harmless error.'" *Id.* at 88, quoting *Chapman v. California*, 386 U.S. 18, 23 n.8 (1967). Similarly, the Sixth Circuit, citing *Cronic*, held that "[h]armless error analysis is never appropriate when a criminal defendant is denied counsel during a critical stage of his trial, because prejudice is always presumed in such circumstances." *Hereford v. Warren*, 536 F.3d 523, 541 (6th Cir. 2008), citing *Cronic*, 466 U.S. at 658. The Michigan

Supreme Court considers a fact-finder's viewing of the crime scene to be a critical stage of the proceeding. See, e.g., *People v. Mallory,* 421 Mich. 229, 247 (1984). Thus, counsel's absence at the trial court's second visit arguably would have required automatic reversal of Petitioner's convictions had a contemporaneous objection been made, and had the trial court then failed to correct the error.

On the other hand, Respondent asserts that the automatic-reversal rule does not apply to the unobjected to violation here. Support exists for this assertion a well. In *Satterwhite v. Texas*, 486 U.S. 249, 257 (1988), the Supreme Court held that the automatic reversal rule for a denial of counsel during a critical stage does not apply to all cases. The Court stated that even where counsel is absent during a critical stage, harmless error analysis is nevertheless appropriate "where the evil caused by a Sixth Amendment violation is limited to the erroneous admission of particular evidence at trial." *Id.* Here, not unlike *Satterwhite*, the absence of counsel was limited to the admission of the trial court's observations regarding the lighting conditions at the scene of the crime, an issue that did not have a substantial or injurious impact on the result of the trial.

Furthermore, in *Woods v. Donald*, 135 S. Ct. 1372, 1375 (2015), the habeas petitioner claimed that he was entitled to habeas relief without a

need for demonstrating prejudice where he was denied his right to counsel when witnesses testified at his trial regarding his co-defendant's guilt. The Supreme Court held that the Sixth Circuit erroneously granted relief because there was no clearly established Supreme Court law holding that the reception of evidence regarding co-defendants is a critical stage of the proceedings against the petitioner. *Id.* at 1377. The Court stated, "*Cronic* applies in 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Id.* at 1378. Here, the trial court's second view of the crime scene was performed "just [to] look at the lighting around the place." Dkt. 6-13, at 37-38. The visit was inconsequential enough that neither defense counsel opted to put anything on the record, and the trial court's findings of fact after trial did not rely on the lighting he observed as a reason to find Petitioner guilty of the offense.[3] Under these circumstances, it would be reasonable to conclude that the trial court's second crime scene visit was not a critical stage of the proceedings requiring automatic reversal had an objection been made.

All of this is to say why the application of the contemporaneous objection rule to this claim is especially appropriate here. If,

---

[3]In fact, Gaca testified that she was about twenty feet away from the victim's car at the time of the shooting, but after the crime scene visit, the Court determined that the distance was "more like fifty feet," a finding that benefitted the defense. Dkt. 6-14. at 55.

notwithstanding *Satterwhite* and *Woods,* the failure to have counsel present at the second visit was a structural error creating the possibility of automatic reversal, then the error could have been easily remedied by a timely objection after the trial court asked the parties if they had anything they wished to place on the record. Had an objection on the right-to-counsel grounds been made, the trial court could have simply disregarded any observations made during the second visit, thereby curing any error. Granting relief in the absence of an objection would, in effect, create a windfall for counsel's failure to voice an objection when he was invited to do so.

Accordingly, review of Petitioner's third claim is procedurally barred by his failure to object to the visits to the crime scene absent a showing of cause and prejudice. For the reasons stated, Petitioner's counsel was not ineffective for failing to object to the crime scene visit. It appears from the record that counsel wanted the visit to take place, and the observations made there benefitted him by placing Gaca further away from the scene than she estimated in her testimony.

Moreover, Petitioner has failed to demonstrate that he was actually prejudiced by his counsel's failure to object because the evidence presented against him at trial was very strong. Aside from admitting to

Deonte Smith that he committed the crime, the testimony and tether evidence that indicated he was at the mall at the time of the crime, and the eyewitness identification testimony of Gaca - there is the very damning evidence that the week after the murder Petitioner was seen throwing the murder weapon under a parked car when he fled from another mall and was then arrested at the scene. A successful objection to the crime scene visits would not, with reasonable probability, have resulted in a more favorable outcome for Petitioner. *Strickland*, 466 U.S. at 694. As such, he cannot demonstrate cause to excuse his procedural default.

Petitioner has failed to demonstrate entitlement to habeas relief with respect to his third claim.

## D. Ineffective Assistance of Counsel

Petitioner's fourth claim asserts that his trial counsel failed to adequately conduct a pretrial investigation regarding prosecution witness Deonte Smith. Petitioner asserts that neither his nor his co-defendant's attorneys ever interviewed Smith prior to the preliminary examination or trial. Petitioner obtained a purported affidavit from Smith during his direct appeal in which Smith claims that his trial testimony was false. Specifically, the affidavit asserts that Smith never heard Edwards brag about being involved in the murder or that the murder occurred during the perpetration

of a robbery. The document further claims that Smith refused to testify at trial because he knew that it would be in the public presence and people would know that it was false.

After reciting the controlling constitutional standard, the Michigan Court of Appeals rejected the claim as follows:

> Edwards initially argues in his principal brief that his trial counsel was ineffective for failing to interview Deonte before trial. See *People v. Grant*, 470 Mich. 477, 493; 684 N.W.2d 686 (2004) ("[t]he failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome."). Edwards bases this assertion on Deonte's affidavit-offered for the first time on appeal-disavowing his preliminary examination testimony incriminating Edwards. According to Edwards, had counsel interviewed Deonte, he could have exposed Deonte's lies to the court at trial. There are at least two problems with this argument.

> First, Deonte refused to testify at trial. Thus, Edwards's assumption, i.e., that the trial court would have "heard from Smith that he was lying," has no basis. Tellingly, Edwards offers no argument about how his counsel's investigation would have altered Deonte's decision not to testify. Second, even if Deonte would have recanted at trial, this would not erase his prior sworn testimony, which the prosecution would no doubt have presented as a prior inconsistent statement admissible for its substantive value. See MRE 801(d)(1)(A) (inconsistent prior statements made under oath and subject to the penalty of perjury are not hearsay); *People v. Malone*, 445 Mich. 369, 376-378; 518 N.W.2d 418 (1994) (statements that are not hearsay under MRE 801(d)(1) may be used as substantive evidence). It bears further emphasis that recantation testimony, like what Edwards proposes, is inherently "suspect and untrustworthy." *People v. Canter*, 197 Mich. App. 550, 559; 496 N.W.2d 336 (1992). Indeed "[t]here is no form of proof so unreliable as recanting testimony." *Id.* at 559-560 (citation

omitted). In light of this, even if the failure to investigate Denote were unreasonable, our confidence in the trial's outcome remains firm.

*Edwards*, 2015 WL 1069275, *11 (footnote omitted).

To establish ineffective assistance of counsel, a defendant must show both that: (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness"; and (2) the deficient performance resulted in prejudice to the defense. *Strickland*, 466 U.S. at 687-88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. On habeas review, the question becomes "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 562 U.S. at 105.

The Michigan Court of Appeals did not unreasonably apply the

*Strickland* standard when it denied relief with respect to this claim. Contrary to Petitioner's allegations, it is clear that his counsel was not unprepared for Deonte Smith's testimony. During the preliminary examination, counsel cross-examined Smith regarding the gap of more than a year that he waited to tell anyone about the event. Dkt. 7-3, at 125-26. The examination made it clear that counsel was familiar with Smith's statement to police. Petitioner has failed to demonstrate that Smith was open to speaking with counsel prior to the preliminary examination, as Smith's affidavit does not assert that he was willing to do so. Moreover, it is unclear how an interview would have changed anything that occurred at the preliminary examination or at trial. Smith may now say he testified falsely, but he does not claim that he would have "come clean" earlier had he only been interviewed by defense counsel.

Finally, even had counsel's investigation into Smith somehow aided his efforts in cross-examination, there is still not a reasonably probability that the result of the trial would have been different given the very strong case made against Petitioner. Further investigation of Smith would have done nothing to discredit Gaca, who watched Petitioner murder the victim. It would have done nothing to counter the testimony of the police officer who recovered the murder weapon Petitioner was seen throwing under a

car. Nor would it have countered the tether data showing that Petitioner was at the murder scene. Accordingly, Petitioner has failed to show that he was prejudiced by his counsel's alleged failure to further investigate or interview Deonte Smith prior to trial.

As all of Petitioner's claims are procedurally barred from review or without merit, the petition will be denied.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability issued. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and

citations omitted). Here, jurists of reason could debate the Court's conclusion that Petitioner is not entitled to habeas relief with respect to his third claim. A reasonable jurist might dispute this Court's conclusion that the claim is procedurally defaulted and whether the alleged violation of Petitioner's right to counsel at the second crime scene visit requires automatic reversal.

The Court finds that the resolution of Petitioner's remaining claims is not reasonably debatable, so a certificate of appealability will be denied with respect to them.

### V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **GRANTS** a certificate of appealability with respect to Petitioner's third claim, and 3) **DENIES** a certificate of appealability with respect to his remaining claims.

**SO ORDERED.**

Dated: July 17, 2018

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 17, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk